OPINION *Page 2 
{¶ 1} Appellant William R. Hackney appeals his conviction and sentence on one count of aggravated robbery and one count of felonious assault entered in the Stark County Court of Common Pleas.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} In February, 2007, Ward Barnes was walking home from the grocery store with several bags of groceries in hand. As he walked, three men walked toward Barnes and then walked by him. Barnes took notice only of the man who passed closest. Moments later, Barnes was attacked from behind and knocked unconscious.
 {¶ 4} Beatrice Ross was looking out of her front picture window when Barnes was attacked 20 to 25 feet away. She watched as three young men struck Barnes in the face and head, knocking him to the ground. Once Barnes was down, the men began laughing and kicking Barnes. One of them bent over and went through Barnes' pockets. All three men then fled.
 {¶ 5} Ms. Ross called 911. When the police arrived, she told officers that she saw three men roughly between the ages of 15 and 17 attack Barnes. She described two as dark-skinned and one as light-skinned. She described the clothing of all three as dark-colored, hooded coats. Ms. Ross told officers that while the men were attacking Barnes, the hood on the light-skinned man's coat fell back, allowing her to observe that his hair was braided and that it hung down past his shoulders.
 {¶ 6} Alliance Police Department Detective Scott Blake showed Ross and Barnes two photo arrays, one containing a photo of co-defendant Earlzion Ford, and *Page 3 
another containing a photo of Appellant William Hackney. Both Ross and Barnes were able to identify Ford as one of the suspects. Ford was the only one of the three men that Barnes took note of. In the lineup containing Hackney's photo, Ross stated that photo number six looked like the man whose hood had fallen off during the attack, however, she was hesitant to positively identify him because his hair was different in the photo than it was the day she saw him outside her home.
 {¶ 7} On July 27, 2007, Appellant William R. Hackney was indicted on one count of aggravated robbery, a felony of the first degree, in violation of R.C. § 2911.01, and one count of felonious assault, a felony of the second degree, in violation of R.C. § 2903.11.
 {¶ 8} On the day that the case was presented to the grand jury, Ross was sitting next to Detective Blake while the two waited to testify. Blake was reviewing his notes in preparation to testify. His notes contained booking photographs of Appellant Hackney. Upon seeing such photos, Ross told Blake that if he had shown her the booking photograph, she could have made a positive identification of Appellant Hackney as one of the men who attacked Barnes.
 {¶ 9} On October 16, 2007, a jury trial commenced in this matter.
 {¶ 10} At trial, Ross identified Hackney as one of the three men who had attacked Barnes and denied having any doubt as to her certainty.
 {¶ 11} Matt and Cindy Hawrysko testified for the defense at trial. They both claimed that Appellant Hackney was with them on the day of the attack. Both claimed Appellant went with them to Wal-Mart to pick up prescriptions, and then to visit friends. Both however admitted that this was not what they had told police during the *Page 4 
investigation and had instead stated they stayed home all day watching videos the day Barnes was attacked. Matt Hawrysko further testified that he considers Appellant to be a brother and would "defend him to the death."
 {¶ 12} Michael Chu also testified for the defense. Chu testified that he witnessed the attack on Barnes and stated that Appellant was not one of the assailants. He also admitted that he viewed the attack from the end of the street which was Apretty far down.® He described "pretty far" as the length of Judge Haas' courtroom, plus half. He admitted that he did not see the attackers' faces and that he could not see the men clearly. Finally, Chu claimed to know Ford but was unable to identify Ford as one of the attackers.
 {¶ 13} At the conclusion of the trial, following deliberations, the jury found Appellant guilty of both offenses.
 {¶ 14} The trial court sentenced the Appellant to nine (9) years of incarceration on the aggravated robbery offense and three (3) years for the offense of felonious assault. The offenses were ordered to run concurrently with each other for an aggregate prison term of nine (9) years of incarceration.
 {¶ 15} Appellant now appeals to this Court, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 17} "II. THE APPELANT [SIC] WAS DEPRIVED OF DUE PROCESS BY THE MISCONDUCT OF THE PROSECUTOR. *Page 5 
 {¶ 18} "III. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."
 I. {¶ 19} In his first assignment of error, Appellant claims that the jury verdict was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 20} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 21} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the *Page 6 
trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 22} Appellant's challenges are two-fold. First, Appellant argues the testimony of Mrs. Ross was not credible. Secondly, Appellant argues the jury disregarded his credible "alibi witnesses".
 {¶ 23} Appellant's alibi witnesses, Cynthia and Matthew Hawrysko, testified that Appellant was with them running errands and visiting with a friend on the day of the assault, however, both also admitted that they informed Detective Blake that they were at home watching videos on that day. (T. at 172, 196). Cynthia Hawrysko, upon cross-examination, admitted that she had been confused about whether Appellant was with her on Friday, the day of the assault, or the following Saturday, finally acknowledging that Appellant was with her on Saturday, not the day the assault occurred. (T. at 194-196). Matthew Hawrysko testified that he changed the original statement he had given Detective Blake after speaking with Appellant, adding that he would defend Appellant "to the death". (T. at 168-174).
 {¶ 24} Mrs. Ross testified that she was 20-25 feet from Mr. Barnes when he was attacked and that she watched the entire assault. (T. at 103-11). She stated that initially she did not want to identify Appellant from the photo array because his hair was not in dreadlocks in the photo. Id. She then stated that when she saw his booking photograph immediately before testifying before the grand jury that she was able to make a positive identification. (T. at 147-149). *Page 7 
 {¶ 25} In the case sub judice, the jury was presented with two different versions, and chose to disregard Appellant's alibi witnesses in the light of Mrs. Ross' positive identification of Appellant. As this Court has often said, a jury is free to accept or reject any or all of the testimony of the witnesses. We afford great deference to the fact-finder's credibility determinations. See State v. Reed,155 Ohio App.3d 435, 445, 2003-Ohio-6536, 801 N.E.2d 862. In the instant case, the jury obviously believed Ross' testimony and identification of Appellant. With respect to the inconsistency between her initial statement and her trial testimony, we find such inconsistencies do not render Beatrice Ross' version incredible.
 {¶ 26} Upon review of the entire record in this matter, we find there was sufficient, competent, credible evidence to establish Appellant as one of Mr. Barnes' attackers.
 {¶ 27} We find the evidence as presented and the identification by Mrs. Ross to be sufficient to support the jury's finding of guilty, and we find no manifest miscarriage of justice.
 {¶ 28} Appellant's first assignment of error is overruled.
 II. {¶ 29} In his second assignment of error, Appellant argues that prosecutorial misconduct deprived him of his right to due process. We disagree.
 {¶ 30} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, *Page 8 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v.Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749." Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.
 {¶ 31} In the instant case, during closing arguments, the prosecutor stated during his closing argument that Ms. Ross struck him as "credible. The trial court immediately admonished the prosecutor, instructing him "[n]ow don't vouch for her." (T. at 217). The trial court then instructed the jury to "[disregard that comment." Id.
 {¶ 32} We further note that the trial court specifically instructed the jury that closing arguments are not to be considered evidence. (T. at 235). Because the jury is presumed to follow the trial court's instructions, State v. Raglin (1998), 83 Ohio St.3d 253, 264, we presume that the jury followed this instruction in its deliberations and based its conviction upon the evidence alone.
 {¶ 33} We further find that Appellant has not demonstrated, but for the prosecutor's reference to Ms. Ross's testimony as striking him as credible, that the outcome of the trial would have been different.
 {¶ 34} Appellant's second assignment of error is overruled
 III. {¶ 35} In his third assignment of error, Appellant argues that he was denied his right to effective assistance of counsel. We disagree. *Page 9 
 {¶ 36} The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St .3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 37} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the Strickland test to all claims of ineffective assistance of counsel, both trial counsel, or appellate counsel. State v. Turner, Licking App. No. 2006-CA-123, 2007-Ohio-4583; State v. Godfrey (Sept. 2, 1999), Licking App. No. 97CA0155.
 {¶ 38} Appellant bears the burden of establishing there is a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel, see, e.g. State v. Spivey 84 Ohio St.3d 24,1998-Ohio-704, 701 NE 2d 696.
 {¶ 39} Appellant contends that his appellate counsel failed to file a notice of alibi in the case sub judice.
 {¶ 40} Assuming arguendo that trial counsel did fall below an objective standard of reasonable representation in failing to file a notice of alibi, we find Appellant has failed to demonstrate this error was prejudicial as required under the second prong of *Page 10 Strickland, supra, and Bradley, supra. The record reflects that the trial court allowed Appellant to present "alibi" witnesses who testified that he was with them at the time that the assault on Mr. Barnes occurred. In that evidence of alibi was presented at trial via the testimony of Matthew Hawrysko and Cynthia Hawrysko, we find Appellant cannot demonstrate he was prejudiced by counsel's failure to file a notice of alibi.
 {¶ 41} Appellant's third assignment of error is overruled.
 {¶ 42} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Wise, J., Hoffman, P. J., and Edwards, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1